IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| FRANCISCO MARTINEZ, # M-19109, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 14-cv-453-JPG |
| ) | |
| SHANA BEBOUT, ANTHONY WILLS, ) | |
| TIMOTHY VEATH, ) | |
| and RICHARD HARRINGTON, ) | |
| ) | |
| Defendants. ) | |

# MEMORANDUM AND ORDER

**GILBERT, District Judge:**

Plaintiff, currently incarcerated at Pontiac Correctional Center ("Pontiac"), has brought this *pro se* civil rights action pursuant to 42 U.S.C. § 1983, regarding disciplinary sanctions imposed on him while he was confined at Menard Correctional Center ("Menard"). Plaintiff has been incarcerated since 2007. He is serving sentences of 27 years for murder, and four years on a 2013 conviction for possession of a weapon in a penal institution.

In the complaint, filed on April 18, 2014, Plaintiff challenges one specific disciplinary ticket, Number 201300196/1-MEN, issued on January 28, 2013, for 110-Impeding or Interfering with an Investigation (Doc. 1, pp. 9-12). This ticket was issued by Defendant Bebout.

Plaintiff explains, by way of background, that prior to receiving the impeding/interfering ticket, he had been charged with a different infraction on January 14, 2013. The January 14 charge was for dangerous contraband – specifically, possession of a homemade knife which was found on the ground near Plaintiff (Doc. 1, p. 6). Although Plaintiff denied the weapon was his, he was found guilty of the dangerous contraband violation on January 16, 2013, and was

punished with six months in segregation as well as other sanctions[1] (Doc. 1, pp. 6-7). Plaintiff does not challenge the contraband ticket or punishment in the instant action.

Seven days after Plaintiff was found guilty of the dangerous contraband charge, Defendant Bebout took him to the Internal Affairs office and questioned him about the same weapon incident (Doc. 1, p. 7). Plaintiff continued to insist he knew nothing about the knife and had no idea who put it there. Defendant Bebout told him he had until Friday to come up with a name or story, or he would get a ticket for impeding or interfering with an investigation. On Friday, Plaintiff's response was the same, so Defendant Bebout issued the ticket on January 28, 2013 – 14 days after Plaintiff had been sent to segregation on the original dangerous contraband charge. *Id*.

Plaintiff filed a grievance on February 8, 2013 (Doc. 1, pp. 6-8), objecting to the impeding/interfering charge because it arose from the same incident for which he had already been punished and was an improper second ticket; it was served on him more than eight days after the incident, in violation of institutional rules; it falsely stated he had been given a copy of the investigative report; and it was a false charge because he had told the truth in response to Defendant Bebout's questioning (Doc. 1, p. 7).

Plaintiff's grievance was denied at the institutional level by Defendant Warden Harrington on May 1, 2013 (Doc. 1, p. 9). He appealed further, and as a result, the impeding/interfering charge and punishment was ultimately expunged on January 16, 2014 (Doc. 1, p. 10). The reasons given for the decision to expunge were that Menard personnel had not complied with the applicable administrative rules found at Sections 504.30 and 504.80 of the Illinois Administrative Code (Doc. 1, p. 10). ILL. ADMIN. CODE tit. 20, §§ 504.30, 504.80

---

[1] The timing suggests that the homemade weapon incident may have led to Plaintiff's 2013 criminal conviction for possession of a weapon in a penal institution, but the complaint is silent on that matter.

(2013).

The complaint does not disclose the date when the disciplinary hearing had been held on the impeding/interfering charge or what punishment was imposed. However, Plaintiff was evidently given some additional segregation time, because he claims he was "falsely imprisoned" in segregation for 121 days as a result of the improper ticket, before the charge was expunged (Doc. 1, p. 13). In an exhibit Plaintiff filed on May 9, 2014 (Doc. 6), Plaintiff states that he was given one year of segregation as a result of this ticket (Doc. 6, p. 4). The complaint identifies Defendants Wills and Veath as the officers who conducted the disciplinary hearing, but includes no specific factual allegations against them.

Plaintiff seeks compensatory damages for his false imprisonment and mental anguish for the 121 days he was required to serve in segregation before the disciplinary action was expunged (Doc. 1, p. 13).

**Merits Review Pursuant to 28 U.S.C. § 1915A**

Under § 1915A, the Court is required to conduct a prompt threshold review of the complaint, and to dismiss any claims that are frivolous, malicious, fail to state a claim on which relief may be granted, or seek monetary relief from an immune defendant.

After fully considering the allegations in Plaintiff's complaint and exhibits, the Court concludes that this action is subject to summary dismissal.

Plaintiff asserts that he was made to serve 121 more days (about four months) in segregation than he should have spent there, as a result of the improper punishment for impeding/interfering with an investigation. Notably, he was given six months in segregation for the earlier dangerous contraband charge. Thus, it appears that he began to serve the additional segregation time for the impeding/interfering charge once he completed his first six months in

segregation. If he was originally given one additional year in segregation on the impeding/interfering ticket, then he was released early as a result of the expungement.

Under certain limited circumstances, an inmate punished with segregation may be able to pursue a claim for deprivation of a liberty interest without due process of law. *See Marion v. Columbia Corr. Inst.*, 559 F.3d 693, 697-98 (7th Cir. 2009). However, those circumstances are not apparent in the instant case. First, although there were violations of the prison's administrative rules governing the disciplinary process, those discrepancies alone do not rise to the level of a constitutional violation of Plaintiff's procedural due process rights in reference to the impeding/interfering charge. A federal court does not enforce state law or regulations, and a state rule violation does not necessarily equal a wrong of constitutional dimension. *See Pasiewicz v. Lake Cnty. Forest Preserve Dist.*, 270 F.3d 520, 526 (7th Cir. 2001); *Archie v. City of Racine*, 847 F.2d 1211, 1217 (7th Cir. 1988) (en banc), *cert. denied,* 489 U.S. 1065 (1989).

Under *Wolff v. McDonnell*, 418 U.S. 539, 563-69 (1974), in order to satisfy due process concerns, an inmate facing disciplinary action must be given advance written notice of the charge, the right to appear before the hearing panel, the right to call witnesses if prison safety allows, and a written statement of the reasons for the discipline imposed. Further, the disciplinary decision must be supported by "some evidence." *Black v. Lane*, 22 F.3d 1395, 1402 (7th Cir. 1994). Even a meager amount of supporting evidence is sufficient to satisfy this inquiry. *Scruggs v. Jordan,* 485 F.3d 934, 941 (7th Cir. 2007).

In light of *Wolff*, Plaintiff's key allegations concern the question of advance notice. He does not claim that he received no notice at all of the charge, however – only that he was not charged within the eight-day time frame required in Section 504.30. ILL. ADMIN. CODE tit. 20, § 504.30. Even a delayed notice may satisfy *Wolff*, so long as it is received 24 hours in advance

of the disciplinary hearing.  *Wolff*, 418 U.S. at 564.  Further, Plaintiff states only that he did not receive a copy of the investigative report.  Again, that omission may not run afoul of *Wolff* if Plaintiff did in fact receive written notice of the factual basis for the impeding/interfering charge, sufficient for him to prepare a defense.  Thus, the complaint does not clearly indicate that Plaintiff's due process rights were violated in connection with this charge.  However, even if the Court assumes that the disciplinary process was *not* conducted according to the *Wolff* requirements, the complaint still fails to state a cognizable claim for deprivation of a liberty interest without due process.

First of all, the favorable ruling that expunged Plaintiff's impeding/interfering charge in January 2014 shows that Plaintiff received the due process he demanded, albeit not swiftly enough to prevent him from serving the 121 days in segregation about which he now complains.

Equally important, the Supreme Court and the Seventh Circuit have strictly limited a prisoner's ability to pursue a civil rights claim for having been confined in punitive segregation. An inmate has a due process liberty interest in being in the general prison population only if the conditions of his or her disciplinary confinement impose "atypical and significant hardship[s] . . . in relation to the ordinary incidents of prison life."  *Sandin v. Conner*, 515 U.S. 472, 484 (1995); *see also Wagner v. Hanks*, 128 F.3d 1173, 1175 (7th Cir. 1997) (in light of *Sandin*, "the right to litigate disciplinary confinements has become vanishingly small").  For prisoners whose punishment includes being put in disciplinary segregation, under *Sandin*, "the key comparison is between disciplinary segregation and nondisciplinary segregation rather than between disciplinary segregation and the general prison population."  *Wagner*, 128 F.3d at 1175.

The Seventh Circuit has elaborated two elements for determining whether disciplinary segregation conditions impose atypical and significant hardships:  "the combined import of the

duration of the segregative confinement *and* the conditions endured by the prisoner during that period." *Marion v. Columbia Corr. Inst.*, 559 F.3d 693, 697-98 (7th Cir. 2009) (emphasis in original). The first prong of this two-part analysis focuses solely on the duration of disciplinary segregation. For relatively short periods of disciplinary segregation, inquiry into specific conditions of confinement is unnecessary. *See Lekas v. Briley*, 405 F.3d 602, 612 (7th Cir. 2005) (56 days); *Thomas v. Ramos*, 130 F.3d 754, 761 (7th Cir. 1997) (70 days) ("a relatively short period when one considers his 12 year prison sentence"). In these cases, the short duration of the disciplinary segregation forecloses any due process liberty interest regardless of the conditions. *See Marion*, 559 F.3d at 698 ("we have affirmed dismissal without requiring a factual inquiry into the conditions of confinement"). More recently, the Seventh Circuit reiterated that, as it had stated in *Marion*, six months in segregation "is not such an extreme term and, standing alone, would not trigger due process rights." *Hardaway v. Meyerhoff*, 734 F.3d 740, 744 (7th Cir. 2013) (quoting *Marion*, 559 F.3d at 698) (internal quotations omitted). However, confinement in segregation for that length of time would trigger an inquiry into the conditions to which the prisoner was subjected.

In Plaintiff's case, he claims that he was confined in segregation four months longer than he should have been. Four months could be long enough to prompt an inquiry into the conditions of that confinement, if the segregation had been imposed after a procedurally flawed hearing. As noted above, Plaintiff's allegations do not suggest that the procedures ran afoul of *Wolff*. Further, the Court may also consider the four-month confinement in the context of Plaintiff's total sentences: 27 years plus the consecutive four-year sentence imposed in 2013. In light of Plaintiff's entire sentence of approximately 31 years, a four-month confinement in segregation, even if it was wrongfully imposed, is comparatively short. *See Marion*, 559 F.3d at

697-98 n.2 (70-day segregation period is "relatively short" in the context of a 12-year prison sentence, citing *Thomas v. Ramos*, 130 F.3d 754, 761 (7th Cir. 1997)).

Significantly, Plaintiff raises no complaint whatsoever regarding the conditions of his confinement in segregation. He says only that he endured "mental anguish" due to being wrongly punished for a false charge. While Plaintiff's situation may have been unfair, this does not represent an "atypical and significant hardship" as contemplated by the cases discussed above. In the absence of any suggestion that the conditions he endured in segregation were any more harsh than the conditions in non-disciplinary segregation, Plaintiff fails to raise a claim for deprivation of a liberty interest without due process that would require further factual inquiry as contemplated in *Marion* and *Hardaway*. Accordingly, this action shall be dismissed without prejudice.

**Pending Motion**

Because this case shall be dismissed, Plaintiff's motion for recruitment of counsel (Doc. 3) is **DENIED AS MOOT**.

**Disposition**

For the reasons stated above, this action is **DISMISSED without prejudice** for failure to state a claim upon which relief may be granted.

Plaintiff is **ADVISED** that this dismissal shall count as one of his allotted "strikes" under the provisions of 28 U.S.C. § 1915(g). A dismissal without prejudice may count as a strike, so long as the dismissal is made because the action is frivolous, malicious, or fails to state a claim. *See Paul v. Marberry*, 658 F.3d 702, 704 (7th Cir. 2011). Plaintiff's obligation to pay the filing fee for this case was incurred at the time the action was filed, thus the filing fee of $350.00

remains due and payable. *See* 28 U.S.C. § 1915(b)(1); *Lucien v. Jockisch*, 133 F.3d 464, 467 (7th Cir. 1998).

If Plaintiff wishes to appeal this dismissal, he may file a notice of appeal with this Court within thirty days of the entry of judgment. FED. R. APP. P. 4(a)(1)(A). A motion for leave to appeal *in forma pauperis* should set forth the issues Plaintiff plans to present on appeal. *See* FED. R. APP. P. 24(a)(1)(C). If Plaintiff does choose to appeal, he will be liable for the $505.00 appellate filing fee irrespective of the outcome of the appeal. *See* FED. R. APP. P. 3(e); 28 U.S.C. § 1915(e)(2); *Ammons v. Gerlinger*, 547 F.3d 724, 725-26 (7th Cir. 2008); *Sloan v. Lesza*, 181 F.3d 857, 858-59 (7th Cir. 1999); *Lucien v. Jockisch*, 133 F.3d 464, 467 (7th Cir. 1998). Moreover, if the appeal is found to be nonmeritorious, Plaintiff may also incur another "strike." A timely motion filed pursuant to Federal Rule of Civil Procedure 59(e)[2] may toll the 30-day appeal deadline. FED. R. APP. P. 4(a)(4).

The Clerk shall **CLOSE THIS CASE** and enter judgment accordingly.

**IT IS SO ORDERED.**

**DATED: May 16, 2014**

> *s/ J. Phil Gilbert*
> United States District Judge

---

[2] A Rule 59(e) motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment. FED. R. CIV. P. 59(e).